Junior and Oneta **BIGGERSTAFF**, Plaintiffs–Appellants,

v.

Rodney **NANCE**, d/b/a Nance Construction, and William Mease, d/b/a B & M Concrete Construction Company, Defendants–Respondents.

No. 15799.

Missouri Court of Appeals, Southern District, Division One.

May 3, 1989.

Richard L. Anderson, Kimberling City, for plaintiffs-appellants.

Robert S. Wiley, Crane, Loyd Francis, Kimberling City, for defendants-respondents.

GREENE, Judge.

Junior Biggerstaff and his wife, Oneta Biggerstaff, sued Rodney Nance, d/b/a Nance Construction, and William Mease, d/b/a B & M Concrete Construction Company, claiming that Nance and Mease faultily constructed concrete retaining walls at a home being built for the Biggerstaffs in Stone County, Missouri. The suit alleged that by reason of faulty construction, one retaining wall collapsed, causing damage to the Biggerstaffs, and the other wall "is subject to collapsing at any moment." The Biggerstaffs asked for damages on two theories: (1) that Nance and Mease breached their contract with the Biggerstaffs by not building the retaining walls in a workmanlike manner, and (2) that Nance and Mease were negligent by not incorporating vertical steel reinforcing rods into the retaining walls and the footings on which the walls rested, so that one retaining wall collapsed within a few days after completion of filling in the area behind the walls with gravel and dirt.

In his answer, Nance alleged that any damage caused by the collapse of the wall was:

> [t]he direct and proximate result of the negligence of plaintiffs' son, who was the agent of the plaintiffs and acting on their behalf, in negligently backfilling against the retaining walls with a dozer, despite warnings by this defendant that such backfilling with the dozer would damage the walls, in that said plaintiffs' son pushed dirt to the top of the walls and pushed against the walls with the force of the dozer in a negligent manner.

Mease alleged, in his answer, that the collapse of the wall "was caused or contributed to by plaintiffs' acts or omissions."

The trial court, sitting without a jury, heard evidence in the case. The only witness for the plaintiffs was Oneta Biggerstaff. When plaintiffs rested, defendants filed motions for directed verdicts. After the trial court indicated that it was going to overrule the motions, defendants elected to stand on their motions for a directed verdict, and presented no evidence. The trial court took the motions under advisement. Later, the trial court entered judgment which overruled the defendants' motions for directed verdict and found in favor of Nance and Mease on both counts of the Biggerstaffs' petition.

On appeal, the Biggerstaffs claim the trial court's judgment was not supported by substantial evidence, and was against the greater weight of the evidence. If they are correct in this assumption, the judgment must be reversed. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). A summary of Mrs. Biggerstaff's testimony is as follows. In October of 1986, the Biggerstaffs decided to have a house with a basement built in the Trace Hollow area near Lampe, Missouri. They verbally retained Nance to do the primary construction of the house. Periodically, Nance submitted bills to the Biggerstaffs for his labor and materials used in the construction, which they paid. Nance suggested to the Biggerstaffs that they have retaining walls built on both sides of the door leading out of the basement which would create a storage area. The Biggerstaffs agreed. Nance poured the concrete footings for the house and retaining walls. Mease, a subcontractor, poured the basement and retaining walls. Mease was hired on the recommendation of Nance. Mrs. Biggerstaff did not watch Mease frame or pour the walls, and knew nothing of construction work or what was required in order to erect the walls in a workmanlike manner.

After the retaining walls were poured, it was necessary to backfill the area behind the retaining walls to level it with the rest of the yard. The walls were approximately 80 feet long and were 7½ feet tall at one end, sloping to 2 feet at the other. Mease finished pouring the retaining walls the last of October. In an effort to save money on the construction costs, Mrs. Biggerstaff suggested to Nance that her son, Lonnie, do the backfilling work with a bulldozer that belonged to Mrs. Biggerstaff's brother-in-law. Lonnie had no prior construction experience.

On December 1, 1986, Lonnie did about half of the backfilling, which consisted of using the bulldozer to push dirt and rock into the area behind the walls, and on February 9, 1987, he finished the job. On February 15, 1987, after several days of heavy rainfall, one of the retaining walls collapsed, destroying a basement window, as well as causing other damage necessitating cleanup costs. Mrs. Biggerstaff asked Nance what caused the wall to collapse, and he told her that Lonnie had "pushed too much dirt behind" the wall, causing too much pressure on it. He told her he would contact Mease and talk with him about the collapse of the wall. She told Nance, "Until this wall deal is settled, don't do no more to the house." Nance removed his tools and equipment from the job site, and did not return there at any later date.

There was some testimony by Mrs. Biggerstaff that there were horizontal steel reinforcing rods in the concrete that made up the retaining walls. She also gave some testimony that there were two broken off vertical reinforcing rods in one end of the footing on which the collapsed retaining wall had rested. There was no direct evi-

dence as to what caused the collapse of the wall. Mrs. Biggerstaff testified as to damages caused by the loss of the wall, including loss of a basement window, plus dirt and debris removal.

 Even though the Biggerstaffs alleged breach of contract and negligence on the part of Nance and/or Mease, what they were really trying to recover on was a breach of an implied warranty, as when a person holds himself out as specially qualified to perform work of a particular character, there is an implied warranty that the work he undertakes will be accomplished in a skillful and proper workmanship manner. *Freeman Contracting Company v. Lefferdink,* 419 S.W.2d 266, 275 (Mo.App.1967); *Pitzer v. Hercher,* 318 S.W.2d 397, 399 (Mo.App.1958). The Biggerstaffs had the burden of proving that Nance and/or Mease failed to perform the work in question in a workmanlike manner. *Warnecke v. Laclede Gas Co.,* 455 F.Supp. 444, (E.D. Mo.1978), aff'd *Laclede Gas Co. v. G.W. Warnecke Corp.,* 604 F.2d 561, 568 (8th Cir.1979). The mere showing that the wall fell down did not, of and by itself, furnish proof that it was not constructed in a workmanlike manner. *Burger v. Wood,* 446 S.W.2d 436, 441 (Mo.App.1969).

 Mrs. Biggerstaff did not, and was not entitled to, venture an opinion as to what caused the wall to fall, since, absent any indication she possessed special skill or knowledge with respect to the matter involved that was so superior to that of the average person as to make her opinion a fact of probative value, she was not so qualified. *Levin v. Hilliard,* 266 S.W.2d 573, 576–577 (Mo.1954).

 Evidently, realizing the problem with the burden of proof issue, the Biggerstaffs' attorney urges that such proof can be established by judicial notice, which the trial court did not take, that it is necessary to place vertical steel reinforcing rods in a standing concrete wall, which rods are tied into the wall footings, so as to help the wall withstand pressure from lateral sources.

In the first place, there is no way of knowing from the proof presented whether Nance put vertical steel reinforcing rods into the footings upon which the wall rested, even though there was evidence that he had put such rods in portions of the footings that the walls did not cover. Second, even if he had not, did that fact cause the wall to fall, or did it fall because of the excessive pressure put on it by Lonnie piling too much dirt against it? The doctrine of judicial notice does not apply when there is doubt as to whether that sought to be judicially noted is a fact. *Endicott v. St. Regis Investment Company,* 443 S.W.2d 122, 126 (Mo.1969). We also doubt that it is common knowledge that lack of vertical steel reinforcing rods in a concrete retaining wall connotes defective workmanship, if such is the case. *See Kamo Electric Cooperative v. Dicke,* 296 S.W.2d 905, 908–09 (Mo.App.1956). In our opinion, the question of whether concrete retaining walls are constructed in accordance with sound engineering principles should be answered by expert opinion testimony, rather than by lay witnesses who have no knowledge of the engineering principles in question, or by judicial notice, as judges, by and large, are no better suited to pass upon such a question than is the average layman. *See Randolph v. USF & G Companies,* 626 S.W.2d 418, 421 (Mo.App.1981).

 Since there was no admissible evidence concerning what caused the wall to fall, and since we hold that the question of what caused the wall to collapse should not be supplied by judicial notice, the Biggerstaffs did not prove an essential element of their case, which is the element of causation. Having failed to do so, they have not shown that they carried their burden of proof which would have entitled them to a verdict.

The trial court's judgment is affirmed.

HOLSTEIN, C.J., and CROW, P.J., concur.